NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|   |   |   |
|---|---|---|
| | : | |
| IGOR G. LEVYASH, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 16-2189 (BRM) |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | **OPINION** |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Igor Y. Levyash's ("Plaintiff") appeal from the final decision of the Acting Commissioner of Social Security ("Defendant")[1] denying his application of Social Security Disability Insurance Benefits ("SSDI") for the period September 11, 2012, through September 30, 2014 (the "Claimed Period"). (ECF No. 15 at 2.) For the reasons set forth below, the matter is **REMANDED** for further proceedings.

I.     **BACKGROUND**

On October 22, 2012, Plaintiff applied for SSDI benefits, alleging disability beginning September 1, 2012, due to severe pulmonary impairments, asbestosis, arrhythmia, hypertension, osteoarthritis of the wrists and hands, and diabetes. (Tr. 232, 241.) His claim was denied initially on February 26, 2013, and on reconsideration on August 12, 2013. (Tr. 164-66, 169-172.) On

---

[1] Defendant adopted the decision of the Administrative Law Judge ("ALJ") which concluded Plaintiff was not disabled under the relevant standards, and issued a written decision denying his application on March 24, 2015 (the "ALJ Decision"). (Tr. 55–71.)

August 22, 2013, Plaintiff filed a written request for an administrative hearing. (Tr. 173-74.) On

December 9, 2014, a hearing was held where Plaintiff appeared and testified before ALJ Laureen

Penn. (Tr. 76-138.) Impartial vocational expert, Tanya M. Edghill, also appeared and testified at

the hearing. On March 24, 2015, the ALJ concluded Plaintiff was not disabled. (Tr. 55-71.) The

Appeals Council denied Plaintiffs request for review, rendering the ALJ's decision the Defendant's

final decision. (Tr. 1-6.)

## II.    STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration,

a district court "shall have power to enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*,

239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are

deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42

U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine

the record in its entirety for purposes of determining whether the Commissioner's findings are

supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the

standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). "Substantial

evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v.

Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a

reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those

of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507

U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify

the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *See Pallo v. Comm'r of Soc. Sec.*, No. 15-7385, 2016 WL 7330576, at *11 (D.N.J. Dec. 16, 2016). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are

defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no

longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id.*

### III.   Plaintiff's Appeal of the Defendant's Adoption of the ALJ Decision

Plaintiff challenges the ALJ Decision on five grounds. First, Plaintiff argues the ALJ erred at step three by concluding he did not satisfy the requirements of several "listed impairments" under 20 C.F.R. Part 404, Subpart P, Appendix 1. (ECF No. 15 at 18–19.)[2] Second, Plaintiff argues the ALJ made improper credibility determinations throughout the ALJ Decision. (*Id.* at 19–23.) Third, Plaintiff argues the ALJ erred at step four by concluding he retained the residual functional capacity to perform "light work." (*Id.* at 23–28.) Fourth, Plaintiff argues the ALJ also erred at step four by concluding Plaintiff was capable of performing his past relevant work. (*Id.* at 28–31.) Finally, Plaintiff argues that the Court should remand in light of new evidence. (*Id.* at 26.) The Court will address each argument in turn.

---

[2] Plaintiff also argues that "[a]utomatic reversal and remand is required" because new listings have been issued since the ALJ Decision was rendered. (ECF No. 15 at 19.) He cites no authority for this proposition, however, and the Court addresses in this opinion whether the ALJ correctly analyzed the listings as they existed at the time of the decision. *See, e.g., Revised Med. Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01 (September 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.").

### A. Plaintiff's Challenge to the ALJ's Step Three Determination

#### 1. *Legal Standard*

During step three, the ALJ compares the medical evidence of a claimant's impairments with the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("listed impairments" or "listings"), which are presumed severe enough to preclude any gainful work. *See Holley v. Colvin*, 975 F. Supp. 2d 467, 476 (D.N.J. 2013), *aff'd*, 590 F. App'x 167 (3d Cir. 2014). The listings articulated in 20 C.F.R. Pt. 404, Subpt. P., App. 1, are descriptions of various physical and mental illnesses and abnormalities, categorized by the body system they affect. *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990). All impairments are defined "in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 530. "If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled. . . . If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four." *Holley*, 975 F. Supp. 2d at 476. To be found disabled, however, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*; *see* Social Security Ruling (SSR) 83—19, Dep't of Health & Human Servs. Rulings 90 (Jan. 1983) ("An impairment meets a listed condition . . . only when it manifests the specific findings described in the set of medical criteria for that listed impairment."); 20 C.F.R. § 416.926(a) (1989) (noting that a claimant's impairment is "equivalent" to a listed impairment "if the medical findings are at least equal in severity and duration to the criteria of any listed impairment") "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of

impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531–32 (citing SSR 83–19, at 91–92 ("[I]t is incorrect to consider whether the listing is equaled on the basis of an assessment of *overall* functional impairment. . . . The functional consequences of the impairments . . . irrespective of their nature or extent, *cannot* justify a determination of equivalence" [sic]) (emphases in original)).

To conclude an applicant is not disabled under step three, the ALJ must "set forth the reasons for [her] decision" for her step-three analysis. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). Conclusory statements have been found to be "beyond meaningful judicial review." *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981). In *Burnett*, the Third Circuit remanded the matter because the ALJ made only conclusory statements without mentioning any specific listed impairments or explaining his reasoning. *Burnett*, 220 F.3d at 119-20 (finding "although [Plaintiff] has established that she suffered from a severe musculoskeletal [impairment], said impairment failed to equal the level of severity of any disabling condition contained in Appendix 1, Subpart of Social Security Regulations No. 4."). In *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008), the court found "the ALJ failed at step three by failing to consider [Plaintiff's] impairments in combination when determining medical equivalence." Further, the "ALJ failed to combine [Plaintiff's] many medical impairments and compare them to analogous Appendix 1 listings." *Id.* The ALJ's entire analysis consisted of one cursory paragraph stating:

> Regarding steps two and three, the evidence establishes the existence of a "severe" impairment involving left-eye blindness, diabetes, hepatitis C and cirrhosis, degenerative disc disease of the lumbar spine, bronchitis, and depression, but does not disclose any medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P to Regulations No. 4.

*Id.*

As the Third Circuit has explained, the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis . . . [but must] ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. The ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant Listing." *Scatorchia v. Comm'r of Soc. Sec.*, 137 F. App'x 468, 470–71 (3d Cir. 2005).

### 2.    *Decision*

Plaintiff argues the ALJ erred by concluding he did not meet the requirements for a severe impairment under listings 4.05, 12.04, and 12.06. (ECF No. 15 at 18-19.)[3] Defendant responds the ALJ properly accounted for the relevant evidence in concluding Plaintiff did not meet the requirements of those listings. (ECF No. 21 at 9-12.)

#### i.    *Listing 4.05*

Listing 4.05 requires:

> Recurrent arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled, recurrent episodes of cardiac syncope or near syncope, despite prescribed treatment, and documented by resting or ambulatory (Holter) electrocardiography,

---

[3] The ALJ addressed listings other than 4.05, 12.04, and 12.06 (Tr. 61–65), but the Court limits its analysis to the listings specifically discussed by Plaintiff in his appeal.

or by other appropriate medically acceptable testing, coincident with
the occurrence of syncope or near syncope.

*See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (internal cross-references omitted).

As to listing 4.05, Plaintiff submits the ALJ did not properly consider the opinion of Dr. Jack Stroh. (ECF No. 15 at 19.) Dr. Stroh signed a form indicating Plaintiff satisfied the requirements of listing 4.05. (Tr. 589.) The ALJ considered and rejected Dr. Stroh's opinion because it was not supported by additional evidence or explanation:

> Counsel contends that the claimant's heart arrhythmias meet Listing 4.05, based on Dr. Stroh's December 4, 2014 report, which notes recurrent arrhythmias that meet Listing 4.05 with an onset prior to February 2010 (Exhibits 13E and 21F). However, Listing 4.05 requires recurrent arrhythmias resulting in uncontrolled episodes of cardiac syncope or near syncope, despite prescribed treatment, documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope. The only episode of syncope noted in the record is the claimant's January 23 to January 25, 2014 hospitalization, but the claimant's syncope on this occasion does not appear to be cardiac related. An echocardiogram revealed borderline left ventricular hypertrophy and diastolic dysfunction, with an ejection fraction of 60%; an EKG revealed sinus bradycardia; a chest X-ray was normal; and the claimant's heart rhythm was normal (Exhibit 18F). An October 2011 stress echocardiogram also revealed an ejection fraction of 60% and was negative for ischemia and revealed trace mitral regurgitation (Exhibit 3F). Progress notes from Dr. Chinitz from June 4, 2013 note that the claimant reported feeling well without recurrent atrial arrhythmias (Exhibit 1lF). Since Dr. Stroh provides no rationale to support his opinion, the undersigned gives it little weight under 20 CPR 404.1527, and finds that the claimant's heart arrhythmias do not meet or equal Listing 4.05.

(Tr. 62.)

The Court finds the ALJ's decision with respect to listing 4.05 is supported by substantial evidence. Listing 4.05 listing requires, *inter alia*, "recurrent episodes of cardiac syncope or near syncope" that are attributable to "recurrent arrhythmias." The pertinent social security regulations

explain that there must be a documented causal relationship between the two. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 104.00(F)(c) ("For purposes of 4.05, there must be a documented association between the syncope or near syncope and the recurrent arrhythmia. The recurrent arrhythmia, not some other cardiac or non-cardiac disorder, must be established as the cause of the associated symptom."). The ALJ observed the administrative record does not reflect recurrent bouts of syncope or contain any evidence that such syncope was caused by cardiac arrhythmia. (Tr. 62.) Particularly given Dr. Stroh's lack of explanation for his conclusion that Plaintiff satisfied the requirements of listing 4.05, the Court finds the ALJ was within her discretion to discount Dr. Stroh's opinion in light of other evidence in the record.

## ii.    *Listings 12.04 and 12.06*

Plaintiff also challenges the ALJ's finding that he did not satisfy the requirements for a severe impairment under listings 12.04 and 12.06. (ECF No. 9 at 23–24.) In support of his contention, Plaintiff cites to records from psychiatrist Dr. Boris Borodulin, who indicated Plaintiff satisfied the requirements of both listings. (Tr. 548–51.)

Listings 12.04 and 12.06 provide multiple ways to demonstrate the existence of a severe mental impairment based on satisfying certain criteria. Both listings have "A Criteria," "B Criteria," and "C Criteria." For impairments under 12.04 (affective disorders), the severity requirements are met if "*both* A *and* B are satisfied, *or* when the requirements in C are satisfied." 20 C.F.R. Part 404, Subpart P, Appendix 1 (emphasis added). Listing 12.06 is slightly different; the severity requirements under listing 12.06 are met "when the requirements in *both* A *and* B are satisfied, *or* when the requirements in *both* A *and* C are satisfied. *Id.* (emphasis added).

The "B Criteria" for listings 12.04 and 12.06 are the same, and require a showing that the applicant have "at least two of the following: (1) marked restriction of activities of daily living; or

(2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration." *Id.* The ALJ concluded Plaintiff could not satisfy these "B Criteria," stating:

> In activities of daily living, the claimant had moderate restriction. In the Function Report, the claimant stated that he has good days and bad days. He walks his dog, helps cook, and does chores 1 to 2 times a week. On bad days, he lies down or uses the computer (Exhibit 2E). The claimant testified that he lies down and watches TV during the day, but also said that he will go to the supermarket with his wife. He drives a little bit and reads the news on the internet.
>
> In social functioning, the claimant had mild difficulties. In the Function Report, the claimant stated that he can be very easily aggravated and irritated, but also stated that he will sit, eat, and talk with others 3 to 4 times a month (Exhibit 2E). At the hearing, the claimant testified that he socializes a few times a month rather than the 4 times a month he indicated in Exhibit 2E, but this decrease seemed more about his physical limitations than not wanting to socialize. The claimant testified that he visits his mother in Brooklyn and his friend in Staten Island and that they also come to visit him. His son will also come to visit with his family.
>
> With regard to concentration, persistence or pace, the claimant had moderate difficulties. In the Function Report, the claimant stated that he can follow written instructions okay, but that he has some trouble remembering spoken instructions (Exhibit 2E). The claimant testified that his wife reminds him to take his medications sometimes. Progress notes from Dr. Borodulin note intact memory, but problems with concentration (Exhibits 16F and 22F). The claimant testified that he reads the news on the internet several times a week.
>
> As for episodes of decompensation, the claimant had experienced no episodes of decompensation, which have been of extended duration. The record does not document any psychiatric hospitalizations or partial hospitalizations.
>
> In an April 18, 2014 report, treating psychiatrist Dr. Borodulin states that the claimant has depression and recurrent severe panic attacks with moderate restriction of the activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and 3 or 4 repeated episodes of decompensation, each of extended duration. Dr.

Borodulin also indicated that the claimant's condition has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate (Exhibit 17F).

Although Dr. Borodulin is a treating source, his opinion is not consistent with the claimant's own testimony that he takes care of his activities of daily living and socializes. In addition, the claimant did not mention any episodes of decompensation and the medical evidence of record does not document any episodes of decompensation. Dr. Borodulin's progress notes contain references to supportive therapy and treatment with medication, but there is nothing in the therapy notes that supports Dr. Borodulin's opinions in Exhibit 17F, and the therapy notes do not mention recurrent panic attacks as an issue (Exhibits 16F and 22F). Dr. Borodulin does not provide any rationale for his opinions in Exhibit 17F, and his findings appear to be based solely on the claimant's report. The undersigned also notes that the claimant saw Dr. Borodulin twice in 2010 (1/26 and 2/18/10), and then not again until September 17, 2013 (Exhibit 17F). Accordingly, the undersigned gives little weight to Dr. Borodulin's opinion under 20 CFR 404.1527.

Because the claimant's mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied.

(Tr. 63–64.)

The ALJ also concluded Plaintiff did not satisfy the "C Criteria" for 12.04:

The undersigned has also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not document repeated episodes of decompensation, each of extended duration. There is no evidence of a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate. There is no evidence of a current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

(Tr. 64.)

Based on this analysis, the Court concludes the ALJ's decision is supported by substantial evidence. It is true that Dr. Borodulin indicated Plaintiff satisfied the requirements of listings 12.04 and 12.06, but the ALJ appropriately weighed Dr. Borodulin's unelaborated conclusions against contradictory evidence in the record. Indeed, the ALJ explicitly explained why she discounted Dr. Borodulin's conclusions, by pointing out discrepancies between those conclusions and Dr. Borodulin's own treatment records. The ALJ also explained why Plaintiff did not meet the "C Criteria" for listing 12.04, which would have been an alternate way to demonstrate a severe impairment under that listing.

Therefore, the Court also declines to remand based on the ALJ's failure to specifically consider whether Plaintiff satisfied the alternative method of demonstrating severity under listing 12.06 (*i.e.*, by satisfying the "A Criteria" *and* "C Criteria" for that listing). Such a showing would require Plaintiff to demonstrate a disorder "resulting in complete inability to function independently outside the area of one's home." 20 C.F.R. Part 404, Subpart P, Appendix 1, para. 12.06(c). Based on the ALJ's discussion of the "B Criteria," which indicates Plaintiff was able to perform tasks independently outside the home (*e.g.*, driving, shopping, traveling), the Court sees no reason to remand for specific consideration of that criteria. *Scatorchia*, 137 F. App'x at 470–71 (3d Cir. 2005) (noting that ALJ need only "clearly evaluat[e] the available medical evidence in the record and then set[] forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant Listing"). The Court finds the ALJ's analysis at step three satisfies the substantial evidence standard.

**B.      Plaintiff's Challenge to the ALJ's "Credibility" Determinations**

Plaintiff argues the Court should reverse the Defendant and ALJ Decision because the ALJ made a series of inappropriate credibility determinations by discounting certain evidence in the

record. (ECF No. 15 at 19–23.) Specifically, Plaintiff submits the ALJ erred in discounting his subjective complaints of pain and the opinions of Dr. Borodulin. (*See id.*) Plaintiff contends these credibility determinations were inappropriate in light of recently-issued Social Security Ruling ("SSR") 16-3P, which provides amended guidance on how to evaluate symptoms in disability claims. *See* SSR 16-3P, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). Defendant argues SSR 16-3P was not binding on the ALJ because the ALJ Decision was issued before SSR 16-3P's "effective date" of March 16, 2016. (ECF No. 21 at 12–13.) Defendant also argues that, regardless of whether SSR 16-3P applies retroactively, the ALJ Decision satisfies the new guidance. (*Id.* at 13–15.)

Courts disagree as to whether SS 16-3P applies retroactively. *Compare Mendenhall v. Colvin*, No. 14-3389, 2016 WL 4250214, at *3 (C.D. Ill. Aug. 10, 2016) (SSR 16-3P applies retroactively), *with Alvarez v. Colvin*, No. 16-0432, 2017 WL 2712872, at *7 (S.D. Tex. June 22, 2017) (SSR 16-3P does not apply retroactively). The issue has not been resolved definitively in this circuit, though Courts in this district have previously concluded SSR 16-3P does not apply retroactively. *See Brando v. Colvin*, No. 15-3219, 2017 WL 2364194, at *21 (D.N.J. May 31, 2017).

Nevertheless, the Court need not revisit the question of whether SSR 16-3P applies retroactively because the ALJ's decision is satisfactory under the new guidance. SSR 16-3P announced a policy against evaluating claimant's truthfulness in determining whether individuals are disabled. As the guidance states, "[i]n evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." SSR 16-3P, 2016 WL 1119029, at *10. But while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record

evidence remains the same. For example, when assessing the intensity, persistence, and limiting effects of an individual's symptoms, the new guidance is clear that potentially contradictory record evidence should be considered:

> In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.
>
> We may or may not find an individual's symptoms and related limitations consistent with the evidence in his or her record. We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions. We will evaluate an individual's symptoms considering all the evidence in his or her record.
>
> In determining whether an individual's symptoms will reduce his or her corresponding capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, we will consider the consistency of the individual's own statements. To do so, we will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances.

*Id.* at 7–8.

The ALJ retains the responsibility to weigh an individual's statements against other available evidence. As the Seventh Circuit has observed, the point of the new guidance is to "clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, No. 15-3883, 2016 WL 3997246, at *1 (7th Cir. July 26, 2016).

In her decision, the ALJ stated, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 66.) Although the ALJ would doubtless use different terminology under the new guidance, the thrust of the analysis would be the same. For example, while considering Dr. Borodulin's unexplained conclusion that Plaintiff suffered from depression and severe panic attacks, the ALJ considered inconsistent prior statements from Plaintiff that he engages in various activities of daily life. (Tr. 68.) This kind of assessment is consistent with the new guidance. *See* SSR 16-3P, 2016 WL 1119029, at *8 ("In determining whether an individual's symptoms will reduce his or her corresponding capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, we will consider the consistency of the individual's own statements.").

Plaintiff does not identify any "credibility determinations" by the ALJ that would be inappropriate under the new guidance. Therefore, the ALJ's weighing of the available evidence was consistent with both previous and current guidance. Accordingly, the Court declines to reverse the ALJ Decision on the grounds that the ALJ made improper credibility determinations. *Cf. Pidgeon v. Colvin*, No. 15-2897, 2016 WL 2647666, at *11 n.7 (D.N.J. May 9, 2016) (affirming the ALJ after a challenge based on issuance of SSR 16-3P and noting "the Court's analysis is the same under either ruling"). To the extent Plaintiff challenges the substantive conclusions of the ALJ's review of the evidence, those issues are addressed throughout the opinion.

## C.     Plaintiff's Challenge to Step Four RFC Determination

### 1.     *Legal Standard*

At step four, the ALJ must consider whether the claimant retains the RFC to perform past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009). Plaintiff's first step four challenge relates to the ALJ's findings about his RFC.

In making an RFC determination, an ALJ "must consider all evidence before him," and "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121 (citing *Plummer*, 186 F.3d at 429). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.* (citing *Cotter*, 642 F.2d at 705). Although an ALJ need not fully credit a complainant's own testimony about her pain, the ALJ must nevertheless "take care to address such evidence in the course of his findings." *Smith v. Astrue,* 359 F. App'x 313, 317 (3d Cir. 2009).

## 2.    *Decision*

The ALJ concluded Plaintiff had the residual functional capacity to:

> lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk 4 hours in an 8-hour day; and sit 6 hours in an 8-hour day. The claimant will need to switch positions after 30 minutes. The claimant can perform occasional grasping and occasional fingering with both hands. The claimant can climb ramps and stairs occasionally and stoop, kneel, crouch, and crawl occasionally. The claimant must avoid concentrated exposure to heat, cold, fumes, odors, dusts, gases, and poor ventilation. He cannot work at heights or around moving machinery. He may miss one day of work a month due to mental health issues.

(Tr. 65.)

Plaintiff contends the ALJ did not properly consider the relevant medical evidence in making that RFC determination. (ECF No. 9 at 23–28.) Specifically, Plaintiff challenges the ALJ's purported failure to adequately discuss:

- Plaintiff's cardiovascular impairments, including by discrediting the opinions of Dr. Stroh, Dr. [Larry] Chinitz, and Dr. [Mark] Adelman (*id.* at 25-27);

- The "findings of Dr. [Celia] Roque . . . that the Plaintiff's combined lower extremity joint disease, low back pain, osteoarthritis and overuse syndrome precluded him from prolonged weight-bearing, standing or walking" (*id.* at 25); and

- The findings of "Dr. [Alexander] Marcus . . . that after the right thumb surgery, the Plaintiff remained symptomatic, had problems shaking hands, grabbing things and needed to take precautions using the right thumb and hand" (*id.* at 26).

The Court finds the ALJ's RFC determination is supported by substantial evidence. Plaintiff raises a number of conclusory challenges to the ALJ's RFC determination, but critically fails to identify which aspects of the RFC were unsupported by evidence in the record. He first argues the RFC determination does not adequately reflect his cardiac impairments. (ECF No. 15 at 25-27.) The ALJ specifically discussed record evidence regarding Plaintiff's cardiovascular health:

> The claimant has a history of atrial fibrillation. A January 10, 2012 EKG was abnormal and notes a probable anterolateral myocardial infarction (Exhibit 1lF, p. 8), but the record does not confirm a diagnosis of heart attack. A February 18, 2010 report notes that earlier in the winter, the claimant experienced shortness of breath while walking in the city, but echocardiography and nuclear stress tests were negative (Exhibit 2F, p. 27). An April 27, 2009 carotid ultrasound revealed minimal plaque on the right (0-15%) and mild plaque on the left (16-49%) (Exhibit 2F, p. 28).A stress echocardiograph performed in October 2011 was negative for ischemia and revealed an ejection fraction of 60% and trace mitral regurgitation (Exhibit 3F, p. 1). At a routine office visit on June 4, 2013, the claimant reported occasional palpitations, but no sustained arrhythmias (Exhibit 1l F, p. 5). Progress notes from September 26, 2013 note that the claimant denied any recent shortness of breath or chest pain, and was encouraged to exercise more (Exhibit 20F). Records from St. Peter's Hospital from January 23 to January 25, 2014 note that an EKG revealed sinus bradycardia, but a chest X-ray was normal, an echocardiogram revealed an ejection fraction of

> 60%, borderline left ventricular hypertrophy, and diastolic
> dysfunction, and a Carotid Duplex Scan revealed bilateral carotid
> stenosis of only 15% (Exhibit 18F).

(Tr. 66.)

Plaintiff claims this analysis does not properly address evidence from Dr. Stroh, Dr. Chinitz, and Dr. Adelman. (ECF No. 15 at 25-27.) In support of that contention, Plaintiff cites several documents in the record. (*Id.* at 25 (citing Tr. 422–47, 470–78, 539–42, 552–65).) Plaintiff does not identify which aspects of those documents reflect cardiac impairments limiting his ability to work beyond the limitations contained in the ALJ's RFC determination, and the Court's review of those records did not reveal any. In light of the ALJ's discussion of pertinent evidence, the Court will not reverse the ALJ Decision based on a purported failure to adequately consider Plaintiff's cardiac impairments in the context of the RFC determination.

Plaintiff next argues the ALJ did not properly consider the "findings of Dr. Roque . . . that the Plaintiff's combined lower extremity joint disease, low back pain, osteoarthritis and overuse syndrome precluded him from prolonged weight-bearing, standing or walking." (ECF No. 15 at 25.) The ALJ did, however, address Dr. Roque's findings, and acknowledged Dr. Roque's conclusion that Plaintiff had "some limitations for prolonged standing and walking." (Tr. 67.) These limitations were reflected in the ALJ's RFC determination, which limits the weight Plaintiff may carry and how long he may be required to stand or walk in a day. (Tr. 65.)

Finally, Plaintiff argues the RFC determination does not properly account for limitations on his ability to use his hands, as evidenced by treating records from Dr. Marcus. (ECF No. 15 at 26.) Medical records from Dr. Marcus indicate Plaintiff did have various hand and finger pain and weakness, particularly following thumb surgery. (Tr. 448–469.) The ALJ specifically addressed those findings:

The claimant has degenerative joint disease of the thumbs, status-post right thumb surgery on May 19, 2011. The claimant is right hand dominant. On January 25, 2013, the claimant reported that he was very happy with the results of his right thumb surgery. Degenerative joint disease of the left thumb was noted, and the claimant was given an injection. Mild cubital tunnel syndrome was noted on the right (Exhibits 6F and 7F). On January 30, 2013, CE Dr. Roque noted that the claimant had 5/5 grip/grasp strength bilaterally. Pinch strength was 5/5 on the right and 4/5 on the left. The claimant was able to fully extend his hands, make a fist, and oppose the fingers, and he had normal fine and gross manipulation, using mostly the right hand (Exhibit 8F). The claimant testified that he can use his right arm and lift 15-20 lbs. with the thumb closed and he can use his left arm and lift 30 lbs. with the thumb open. The claimant demonstrated being able to grasp with and without the thumb. He testified that he can lift a gallon of milk (8.5 lbs.) and a 10 lb. turkey, but he avoids lifting more. He indicated that he drops things with his right hand, such as supermarket bags, so he carries less. The claimant said that his fingers are fine and that he uses his fingers to hold and grasp, he just has trouble using his thumbs. He is able to type slowly. The claimant said that he can hold silverware, but only with his right hand.

(Tr. 67.)

The ALJ's Decision is supported by substantial evidence with respect to accounting for Plaintiff's hand impairments. The ALJ's analysis above explicitly discusses the treating records of Dr. Marcus, together with other medical records and testimony from Plaintiff himself. Notably, Plaintiff failed to argue with specificity how aspects of the ALJ's RFC determination were unsupported or contradicted by medical evidence in the record. This is not a case where the ALJ failed to "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121. The Court finds the ALJ's RFC determination is adequately supported by substantial evidence.

**D.      Plaintiff's Challenge to Step Four "Past Relevant Work" Determination**

**1.      *Legal Standard***

In addition to making an RFC determination, the ALJ at step four must: (1) make findings of the physical and mental demands of the claimant's past work; and (2) compare the RFC to that past relevant work to determine whether claimant can perform the past relevant work. *Garibay*, 336 F. App'x at 158. SSR 82-62 provides guidance on how the ALJ should determine whether the claimant can perform past relevant work:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles,* etc., on the requirements of the work as generally performed in the economy.

SSR 82-62, 1982 WL 31386, at *3 (S.S.A. Jan. 1, 1982).

In evaluating this evidence, the ALJ should

> determine whether "the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it" or whether "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy."

*Garibay*, 336 F. App'x at 158 (quoting SSR 82-61). Thus, "if the claimant cannot perform the excessive functional demands and/or job duties *actually required* in the former job but can perform the functional demands and job duties as *generally required* by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.* (emphasis added). To determine

the "generally required" functions of specific job, an ALJ may rely on the *Dictionary of Occupational Titles* ("DOT"). *Id.* at 160.

Some jobs defy easy categorization, and information about the general requirements for performing those jobs may not be available in the DOT. So-called "composite jobs" have significant elements of two or more occupations and, as such, have no counterpart in the DOT. *See Standowski v. Colvin*, No. 13-05663, 2015 WL 404659, at *16 (D.N.J. Jan. 29, 2015). "To establish that a claimant maintains the RFC to perform past relevant work in a composite job, the evidence must establish that the claimant can perform *each job* within a composite job, whether as actually performed or as generally performed in the national economy." *Boggs v. Colvin*, No. 13-0111, 2014 WL 1277882, at *10 (M.D. Pa. Mar. 27, 2014). Moreover, an ALJ may not "divide a composite job into two jobs and find the claimant capable of performing past relevant work based on the less demanding of the two jobs." *Id.*

### 2. *Decision*

Plaintiff argues the ALJ erred at step four by concluding he was capable of performing his "past relevant work." (ECF No. 15 at 28-31.)[4] Specifically, Plaintiff contends the ALJ failed to appropriately characterize his past relevant work as a composite job which included aspects of both a purchasing agent and an engineer. (*Id.* at 28.) At the hearing before the ALJ, Plaintiff testified that he was an engineer at Con Edison for 27 years, but later switched to being a purchasing agent at Con Edison because he could not handle the physical requirements of engineering inspections. (Tr. 98–99.) Plaintiff testified that his role as a purchasing agent required

---

[4] Plaintiff also argues the ALJ erred at step 5 because Plaintiff was "unable to return to his past relevant work." (ECF No. 15 at 31.) This section addresses the entirety of Plaintiff's challenge regarding the ALJ's determinations about his past relevant work.

him to spend an average of two days per week traveling. (Tr. 99.) While traveling, Plaintiff needed to carry around a ten-pound bag and would have to climb stairs or ladders, and occasionally go inside boilers. (Tr. 99–100.) Based in part on that testimony, the Vocational Expert at the ALJ hearing found Plaintiff could perform work as a purchasing agent "as it's generally performed in the national economy, not as the claimant described." (Tr. 116.)[5]

The ALJ concluded Plaintiff had "worked two separate jobs, not a compound job," and concluded Plaintiff could return to his past relevant work as a purchasing agent "as generally performed." (Tr. 70.)[6] The ALJ did not explain why she rejected Plaintiff's contention that his past relevant work was a composite job. (*Id.*)

The Court finds remand is necessary to determine whether Plaintiff's past relevant work was a composite job. Here, the Social Security Administration's Program Operations Manual System ("POMS") is instructive. POMS states that "the claimant's [past relevant work] may be a

---

[5] Per the DOT listing cited by the Vocational Expert (162.157-038), a purchasing agent:

> coordinates activities involved with procuring goods and services, such as raw materials, equipment, tools, parts, supplies, and advertising, for establishment: Reviews requisitions. Confers with vendors to obtain product or service information, such as price, availability, and delivery schedule. Selects products for purchase by testing, observing, or examining items. Estimates values according to knowledge of market price. Determines method of procurement, such as direct purchase or bid. Prepares purchase orders or bid requests. Reviews bid proposals and negotiates contracts within budgetary limitations and scope of authority. Maintains manual or computerized procurement records, such as items or services purchased, costs, delivery, product quality or performance, and inventories. Discusses defective or unacceptable goods or services with inspection or quality control personnel, users, vendors, and others to determine source of trouble and take corrective action. May approve invoices for payment. May expedite delivery of goods to users.

[6] The parties appear to use the terms "compound job" and "composite job" interchangeably.

composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant." POMS DI 25005.020, *available at* https://secure.ssa.gov/poms.nsf/lnx/0425005020. As noted above, Plaintiff himself is the "primary source" for his previous work responsibilities, and "statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386, at *3 (S.S.A. Jan. 1, 1982). Plaintiff testified he needed to travel twice per week on average, on trips that required him to engage in physical activities such as climbing ladders and going inside boilers. (Tr. 99–100.) Based on its frequency, such travel appears to have been one of Plaintiff's main job duties. At the very least, the ALJ must explain her reasoning as to why Plaintiff's past work should not be considered a composite job involving responsibilities and physical demands beyond that of a typical purchasing agent.

Remand is necessary here because the step four analysis changes when a claimant's past relevant work is a composite job. As the Social Security Administration itself instructs, "a composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'" POMS, DI 25005.020, *available at* https://secure.ssa.gov/poms.nsf/lnx/0425005020. By assessing only the requirements of a purchasing agent as that role is "generally performed," the ALJ risked running afoul of the established rule that an ALJ may not "divide a composite job into two jobs and find the claimant capable of performing past relevant work based on the less demanding of the two jobs." *Boggs*, 2014 WL 1277882, at *10.

Accordingly, the Court **REMANDS** for further consideration of whether Plaintiff's past relevant work should be considered a composite job, and if so, whether Plaintiff was capable of returning to that work. *See Plumb v. Astrue*, No. 10-3090, 2012 WL 768058, at *6 (D.S.C. Mar. 7,

2012) (remanding case to determine whether past relevant work was a composite job). The Court also directs the ALJ to perform a step five analysis to determine whether Plaintiff was capable of performing other work. As noted previously, undertaking a step five analysis now will assist further review, should any be necessary. *See Santiago v. Colvin*, No. 15-0612, 2016 WL 2593697, at \*13 (D.N.J. May 5, 2016) (directing the ALJ to perform a step five analysis on remand because, while an "unambiguous factual finding at step 4 might well dispose of the issue," a step five analysis would "avoid delay and ensure a final resolution").

### E.    New Evidence

#### 1.    *Legal Standard*

The Court has authority under sentence six of 42 U.S.C. § 405(g) to remand for further proceedings based on new evidence the ALJ did not consider, but only if "the evidence is new and material and if there was good cause why it was not previously presented to the ALJ." *Matthews*, 239 F.3d at 593. New evidence is "material" only if it "relate[s] to the time period for which benefits were denied and does not concern the subsequent deterioration of the previously non-disabling condition." *Lisnichy v. Comm'r of Soc. Sec.,* 599 F. App'x 427, 429 (3d Cir. 2015); *see also Hanson v. Astrue*, No. No. 12-0084, 2013 WL 1631389, at \*9 (W.D. Pa. Apr. 16, 2013) (declining to remand case for new evidence because "[w]hile all of the records submitted to the Appeals Council are 'new' in the sense that they post-date the ALJ's decision, these records are immaterial since they do not relate to the time period for which benefits were denied").

#### 2.    *Decision*

Plaintiff argues Defendant should have considered "new and material evidence" submitted after the ALJ Decision was rendered. (ECF No. 15 at 26.) According to Plaintiff, the new evidence "showed ongoing left thumb pain and limitations requiring additional surgery" and that his "right

shoulder was also found to have severe injury residuals and arthroscopic shoulder surgery was required." (*Id.*) Although Plaintiff maintains these conditions dated back to the Claimed Period, he has failed to make the required showing that the new evidence is material or that there was good cause for why the evidence was not presented to the ALJ in the first place. Accordingly, the Court declines to issue a "sentence six" remand for the consideration of that evidence. *See Matthews*, 239 F.3d at 593.

## IV.    CONCLUSION

For the reasons set forth above, the matter is **REMANDED** for further proceedings consistent with this opinion.

**Date:** March 30, 2018                                  */s/ Brian R. Martinotti*_____
                                                                     **HON. BRIAN R. MARTINOTTI**
                                                                     **UNITED STATES DISTRICT JUDGE**